The final case for argument this morning is 16-1356 Alvarado Hospital v. Burwell. Mr. Hartman. Good morning. May it please the Court, Mark Hartman, Nelson Hartman on behalf of Alvarado Hospital and the other prime hospitals. Your Honors, as you can see from the briefing, the Secretary has basically conceded that at least as to our causes of action for declaratory relief against the Secretary and for a writ of mandamus, that this Court does not have jurisdiction with respect to those particular causes of action. So they should in fact be transferred back to the District Court for the Central District of California, which leaves the remaining questions, unless the Court disagrees with that analysis, as to whether this Court should also send back the hospital's breach of contract claim against the Secretary on the ground that it is clearly a claim that arises under the Medicare Act, both with respect to this Court's prior cases, including Plante Prime Residential and under the test enunciated many years ago, the broad expanse of tests of what arising under Medicare means with respect to a cause of action, regardless of its label. But as you point out, it's a breach of contract, and those belong in the claims case. They do, unless they arise under Medicare. I think this Court has recognized that if the breach of contract is inextricably entwined with the Medicare Act or a claim for benefits, or otherwise, where the substantive basis of the claim and the standing of the claim is under the Medicare Act. What is the gravitas of the Medicare claim that's necessary to decide this contract claim? Isn't the contract claim based really outside of anything? It's not a question of construing or applying the Medicare Act. It's a question of whether or not you had an enforceable agreement. That would be step one. Paying a certain sum of money to the government. So you're right. I mean, the Medicare Act is kind of implicated in this case. Sure. But as far as deciding the contract issue, how does this implicate? And that's in contrast to the Pines case, which you rely on, which the government says is distinguishable. That's kind of different. It wasn't this exclusive exchange of argument that they owe us the money under this contract or settlement that they agreed to. But that would be true for any claim for Medicare benefits as well, right? No. That you want the money for, you want the money under the claim pursuant to your provider agreement. You want the money, but it could be that the claim and the issue involves the application of some provision under the Medicare Act. Yes. Or something else. Here, we're not necessarily construing or applying any term of the Medicare Act. The only thing we're looking at is the argument that there was an enforceable contract here, which the government breached, which is a different piece of paper. It's not, it's outside of the scope of the Medicare Act, right? I don't agree with that for a couple of reasons. Okay, why not? Well, first of all, the underlying claim here that was settled by the Secretary is indisputably claims for Medicare benefits. Okay, okay. I, yeah. You're with me on that. I agree with that. Okay. But we're talking about your claim of a breach of contract is predicated on... On contract law. There's no question, I agree with you on that. And on a contract that is outside. It was, it's all arose in connection with Medicare payments. There's no dispute about that. But the contract itself, in order to construe the contract, there's no reason to look at the Medicare Act at all, right? Well, I disagree. Because first of all, the contract, the Secretary's very authority to settle a short-stay appeals through the administrative process arises from the Medicare Act. So she has no authority to just go outside of the Medicare Act and settle claims without... Well, there's no dispute about that. But the existence of the contract on a breach of contract claim is one step with respect to the breach of contract claim. So say we established that there was a contract, that that settlement agreement is a valid contract and is enforceable. Then this court is diving right into the deep end of the pool with respect to Medicare issues. Because if the contract is established, then we have to determine whether the claims that were submitted by these hospitals were eligible short-stay appeals. That is, they were one-day stays on the Medicare Part A, which, I mean, and there you go. We're already into terms of art on the Medicare. If you could just explain, because I thought this alleged contract that we're disputing in terms of or whether it existed or whether it was enforceable had a specific sum of money attached to it. Right. So it's not like once you determine, even if you determine the contract existed and it was a valid contract, is there more litigation that's associated with the enforcement? There is, because you have to determine whether that amount of money is correct based on the claims we submitted. In other words, the Secretary's offer was, if you had these Part A claims because we're being deluged by Part A claims, so we're offering this settlement to hospitals, 68 cents on the dollar of your claims. What you have to do is submit your lists of all of these short-stay appeals that you've got going, and we're going to look at those and determine whether they're eligible. We're going to look at the reimbursement amount, and then we're going to apply 68 cents to it. So, yeah, in our complaint, Your Honor, we certainly said our estimation is that we submitted lists of claims of $34 million in Medicare reimbursement. And we believe that after you look at them, that 68 cents on the dollar would be, you know, whatever it is, the approximate $24 million. But that is not the same thing as saying it's an exact sum, because the very way the agreement is set up requires CMS to verify that these claims are short-stay claims, one-day-stay claims, then determine whether we've correctly claimed the right amount, and then apply the 68-cent discount to those claims. How that isn't a claim that arises under the Medicare Act, given those steps, that would be required if this Court found a valid contract, strikes me as we'd be way out there in terms of this Court's prior pronouncements about essentially any delving into the types of services provided, the actual reimbursement that was submitted, and that this 68-cent discount is going to be applied for. I mean, you're in Medicare land, Your Honors, and that would be the federal court of claim. They would be in Medicare land to figure that out, assuming that under, yes, basic principles of contract law, we were correct that there was a binding contract. It may be that under basic principles of contract law, we get knocked out. Any court in the land could apply those, but that's not the beginning and end of our breach of contract plan. If there was a contract, a valid contract, then you're in Medicare land. There's no way around that. And so for that reason, it should be sent back. I mean, I don't think it should be sent back because of judicial economy or on the 1500, because obviously the types of relief we're requesting are completely different under the declaratory injunction, but it is not as simple as saying this is just a breach of contract claim, and therefore that ends the analysis. I agree that Pine's residential can be distinguished, but the general principle that the label you put on the cause of action, breach of contract, and the application of contract law is not an out to the preemptive effect of the Medicare Act on this court's jurisdiction. And if the factors which would have to be adjudicated in concluding whether or not this was a valid contract in the first instance, does any, none of that has anything to do with the Medicare Act. I agree with that. We're in contract principles of the contract. So the adjudication of the existence of the contract, you're right. I mean, was there a contract? Was there a consideration? Does the signature matter? So that we agree with. So we're talking about the, there's a lump sum in the contract, but it may kind of be an estimate in terms of how you have to apply it. So your argument is that you use, you would apply criteria under the Medicare Act in determining which of those claims for a benefit under the contract. Right. There's no lump sum. But is there any dispute about those terms? I mean, they could have incorporated those terms into the contract, right? The criteria that you're saying would apply under the Medicare Act, that's not an issue that the court is going to have to resolve. Everybody agrees what the rules of the game are. It's just the application to the claims here, right? Well, yes and no, because, because, because first of all, there's no lump sum in the contract. There's a methodology, there's a methodology that is applied to whatever universe of the hospice. So that methodology exists outside, I mean, is there, there's no dispute about any of those terms. There's nothing beyond that methodology that's going to have to be adjudicated. Right. But the very methodology, Your Honor, is Medicare land. I keep using Medicare land. But if it's incorporated into the contract, then doesn't it become a contract dispute? No, because I think, I think that would be a brand new rule with respect to, to arising on the Medicare, because then this court would be carving out a rule that says if a breach of, if there's a contract entered into the Medicare reimbursement, indisputably involving appeals of Medicare claim disavowals, indisputably involving an administrative system that if we didn't have this contract, we would go through the appeal and then end up in district court on the very claims that were settled here. But you're going to invent a new rule that says if CMS settles those, arising on the Medicare disappears, right, as long as the terms are in there. But if you look within the terms, assuming you're willing to do that, if that still doesn't deal with the problem, then when you look at the contract itself, and I would invite you to do that, that it contains numerous steps that, you're right, may ultimately not be in dispute, but require and are inextricably intertwined with Medicare statutory provisions and reimbursement mechanisms. In other words, the list of eligible claims. They have to look at those and agree with them to make sure that they are, in fact, short stay appeals and they're not paying for appeals of some other issue that they don't want to settle. Then they have to look at what we put in as our reimbursement and determine whether that is the correctly claimed reimbursement before they apply the undisputed methodology that they've agreed to, which is discounting it by 68%. So you'll be a Medicare court. Okay, your interior rebuttal. Okay, thank you, Your Honor. And we'll restore, we'll keep your time. May it please the Court, Benjamin Schultz on behalf of the Secretary of HHS. This Court's case law interpreting preemption of the Tucker Act has boiled down the essential inquiry to two questions. One, is this a case in which the plaintiff is seeking Medicare reimbursement? In which case, if that's true, then it would be something that is outside the Court of Federal Claims jurisdiction. Or two, is it otherwise something that arises under the Medicare Act? And this Court's case law has boiled down that question as to essentially whether or not this was the kind of claim that Congress would have wanted channeled through the Medicare administrative system. And in this unique Medicare case where what really appears to be in dispute here is a question of contract formation, a question that I think both sides agree is not something... Well, is there a... If that question were resolved in your friend's favor, is there something more that has to be resolved in the Court in terms of the eligibility of interpreting the fine Medicare rules in terms of what the exact precise claims that are payable under the contract are? Your Honor, there's a hypothetical possibility that that could be in dispute. At this stage, we don't have any reason to think that that is in dispute, but he's right, that that is a possibility. So what is the government's position that this sort of claim has to go to the Court of Claims? In this particular case, on the facts here, we do believe that this is the kind of contract case that has to go to the Court of Claims. Well, I'll tell you, in looking at this statute, it looks on its face as if it's patterned after the Social Security statute. Now, I have yet to see a Social Security settlement or other contract claim or whatever under that jurisdictional statute, which goes to the District Court, to see that taken to the Court of Federal Claims and before that to the Court of Claims. So you're saying that this almost identical, in its words, jurisdictional statute needs to be interpreted differently? No, we're not saying that there's any difference. And I think what all that Your Honor is really getting at here is how unusual this case is. Typically when people... That's what I'm trying to understand. What's unusual about it? Sure. It's not to me like any other garden variety settlement. Well, I think what's so unusual about this case is that typically when people bring breach of contract cases in the Medicare context, they're really just dressing up a Medicare claim as a breach of contract claim. What they really want is something like benefits. And so, for example, there are cases where somebody sues a contractor who's... But you're saying that every Medicare claimant under some kind of settlement or whatever has to go through this exercise of trying to figure out which court they're in despite the statute, which says you go to the District Court? Your Honor, I think what the statute says is under 405G, what you're going to District Court under is you're going to District Court to review a particular kind of determination. And if you look at the relevant regulations and if you look at the statute, the kind of determination you're reviewing is the determination after this whole administrative process. And the very start of that administrative process is that there has been initial determination about Medicare benefits. And that's actually defined by a regulation. And this court's case law has looked to HHS's regulation defining what initial determination is. So we accept your position we're now going to see similar Social Security claims in the Court of Federal Claims rather than the District Court? Your Honor, I suppose it's theoretically possible that you could have a similar kind of unusual claim. But I think what I was trying to say before was what is so unusual about this case is that... Doesn't look unusual? It may not be unusual for a court that sees a lot of contract cases, but it is very unusual in the Medicare context. Because what is going on here is you don't have a case where somebody is saying that you breached a contract to pay Medicare benefits or you breached some sort of contract where ultimately what we're really fighting about is Medicare benefits. Here you have the unusual case where what seems to be at issue here is a question of contract formation. And I also add, Your Honor, that I think the Telecare case from this court is an important case in why, at least under this court's precedent, we think that this unique case is a case that belonged in the Court of Federal Claims. In the Telecare case, there's no question that you had a dispute over Medicare law. That was the fundamental question there. Medicare in that case was saying that under the Medicare secondary payer statute, a particular kind of entity had to pay. The entity said it wasn't liable under Medicare law. And so you had about as clear a dispute about Medicare law as you could possibly have. But this court nonetheless held that it was not something that arose under the Medicare Act and therefore that there was Tucker Act jurisdiction. And that was because, in light of the particular administrative scheme at issue there, the court thought that that wasn't the kind of claim that had to be channeled through the administrative process. And that was because of the unique situation that the plaintiff was in. The plaintiff in that case was an employer that had sponsored a particular kind of plan. And because of just quirks in Medicare law, that kind of employer was not someone that, at least in this court's view, was an entity that should be using the administrative process. So that's why, at least as we have understood this court's case law, what is ultimately at issue in these kinds of cases is a judgment about whether or not the kind of claim that the plaintiff is bringing is the kind of claim that Congress would have wanted channeled. Now, if we've misjudged that, is there a difference if the dispute here over the contract were not whether or not there was a contract form, but rather how to interpret or apply the contract? Let's assume, hypothetically, it's conceded that the government signed this contract and they're obligated to do whatever it is they're obligated to do under the contract. Would that then be a district court view under the Medicare Act? I think there's a lot stronger case that it would be the kind of case that ought to go to district court. And I think what's challenging in this case is that the relevant regulation that Medicare has here is a regulation defining what is an initial determination. And I'll point out that that's important because an initial determination is what triggers that whole administrative review process and ultimately judicial review. And the administrative determination is something that is, by definition, made by a contractor. Here, the thing that is being challenged here is something that the Secretary did, not something that the contractor did. It was the Secretary's refusal to make a payment. And so that's why it's difficult to fit what plaintiffs are doing here into that initial determination. Now, if we've misunderstood this court's case law, and if, in light of Telecare and Wilson, we've misunderstood how this court understands the arising under jurisprudence, then I guess we've misunderstood it. But the position that we're taking here is one just based on our reading of the court's case law. I'm going to try not to mention Medicare land again, Your Honor. But I will address a couple of points there. Counsel for the Secretary said, if it's a case that seeks Medicare reimbursement, the inquiry is over. It goes back to the district court. And whether it's an issue of contract interpretation or not, and at its most simplistic level, this is clearly a case involving Medicare reimbursement because the very amounts that are going to be paid to us, whether at a discounted rate or not, are Medicare reimbursement on 5,994 claims that we appealed. That is what's being paid, methodology-wise and actual where the monies are. So it's a Medicare reimbursement case. So under that very test, I think, it's going back, or it should go back, or we would request that it goes back. Telecare, if I'm pronouncing that correctly, didn't involve any claim for Medicare benefits at all. It was under the secondary payer statute, which is linked to Medicare but is a separate statute. And in that case, the employer was bringing an illegal exaction case, which there's no dispute that the Court of Federal Claims has jurisdiction over those. But the employer wasn't bringing anything to do with the Medicare claim, had no entitlement to Medicare benefits, et cetera. So we don't think that that case is an arising under case and that it certainly doesn't control here. At the end of the day, the rule cannot be that in a case that involves Medicare reimbursement, there's going to be a carve-out exception if the Secretary simply raises a hand and says, we dispute the existence of a contract. That can't be the basis for Court of Claims jurisdiction. Either there is a category of breach of contract claims that, and if this is the one, that indisputably involve Medicare reimbursement and application of Medicare rules, but that it's the Secretary entering into the contract, she gets to just come out of the Medicare Act and bring it here to determine Medicare stuff and whether the contract exists. The Secretary's position... We don't know if we're going to have to determine any Medicare stuff because the contract issue seems to be based purely on contract principles that would exist in any context, whether we're talking about Medicare, Social Security, or Admiral. I totally agree with you, but why stop the film there? Why stop the film there? Because if in fact the decision ultimately is that there is a contract and that the government agreed to sign this and there were no conditions on this settlement, then once you've applied those contract principles, no question about it, one way or another, if the contract exists, then you are into issues of the Medicare Act. You're into the claims, you're into the amounts billed for those claims, and you're into the application of a discount. That would be another case. We don't have that dispute in front of us. That's not the dispute that's alleged in Count Long. No, but it is the contract that would require that analysis to be done, which is Medicare related. Of course, look, if the Court of Federal Claims doesn't get there because they evaporates. But that would be a rule that said, even though it really does involve Medicare reimbursement, we're going to take a look at Medicare contracts by the Secretary just to determine whether they exist and hope they don't, because otherwise we're going to be into Medicare reimbursement. So with that, Your Honor, I'd like this Court to send me and this case back to California. Thank you. Thank you. The case is submitted. That concludes our proceedings for this morning. I apologize. The Honorable Court is adjourned until tomorrow morning at 10 a.m.